IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-00541-REB-KLM

MATTHEW F.  HALE,

      Plaintiff(s),

v.

JOHN ASHCROFT,
ALBERTO GONZALES,
HARRELL WATTS,
R.  WILEY,
R. (I)  WILEY,
MICHAEL NALLEY,
F. A.  BIERSCHBACH,
FEDERAL BUREAU OF INVESTIGATION,
HARLEY LAPPIN,
HARVEY CHURCH,
U.S. PENITENTIARY - MAX
FEDERAL BUREAU OF PRISONS,
KATHLEEN HAWK SAWYER,

      Defendant(s).
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

      This matter is before the Court on Defendants' **Motion to Dismiss Official**

**Capacity Claims** [Docket No. 55; filed September 11, 2007] ("Motion to Dismiss").

Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., this matter has

been referred to this Court for recommendation. The Court has reviewed the Motion to

Dismiss, Plaintiff's Response [Docket No. 60; Filed October 5, 2007], the entire case file,

and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

## I.    Statement of the Case

At the time of filing the Complaint, Plaintiff Matthew F. Hale was incarcerated at the Administrative Maximum Prison ("ADX") in Florence, Colorado. Plaintiff filed a *pro se* prisoner complaint pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) on March 27, 2006 [Docket No. 2]. Plaintiff alleges that, beginning in February 2003, the Attorney General found "a substantial risk that the [Plaintiff's] communications or contacts with other persons could result in death or serious bodily injury to persons," and directed that Plaintiff be placed under certain "Special Administrative Measures" ("SAMs"). *See* 28 C.F.R. § 501.3(c). The SAMs substantially restrict Plaintiff's access to the mail, the news media, the telephone, and visitors, and remain in effect for a period of one year. *Complaint* [#2] at 7. Application of the SAMs to Plaintiff has been extended each year since their initial implementation in 2003. *Id.* In addition, on April 7, 2005, Plaintiff was found to have knowingly violated the SAMs by dictating a statement to his mother for publication to the news media. *Id.* at 9. As a result, his telephone and visitation privileges were revoked for one year, and thirteen (13) days of good time credit were disallowed. *Id.* at Ex. H. When Plaintiff's SAMs next were under review in March of 2006, they were expanded to restrict Plaintiff's non-legal correspondence, to the effect that Plaintiff is not permitted to send more than one letter,

consisting of three double-sided pieces of paper, per week to a single recipient, and may only correspond with immediate family members.  *Id.* at 8.  Plaintiff also alleges that the SAMs prevent him from seeking legal advice or representation.  *Id.*  In addition to the SAMs, Plaintiff complains that Defendants x-ray every meal he receives, that he is not allowed physical access to a law library, and that he is prohibited from receiving any newspaper other than USA Today.  *Id.*  Plaintiff asserts claims for violations of his rights to due process and equal protection pursuant to the Fifth Amendment, to free speech pursuant to the First Amendment, to be free from unreasonable searches pursuant to the Fourth Amendment, and a claim for conspiracy to violate his civil rights pursuant to 42 U.S.C. § 1985(3).  Plaintiff seeks declaratory and injunctive relief requesting that the SAMs be declared unconstitutional and removed.

Defendants have filed a Motion to Dismiss the claims against them in their official capacities.[1]  Defendants assert that Plaintiff fails to state a claim for relief that is plausible on its face, and request dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1]By Order dated August 15, 2007, District Judge Robert E. Blackburn dismissed the claims against Defendants John Ashcroft, Alberto Gonzales, Harrell Watts, Michael Nalley, F.A. Bierschbach, Harley Lappin, Harvey Church, and Kathleen Hawk Sawyer brought in their individual capacities [Docket No. 51].  Further, by Order dated February 7, 2008, District Judge Blackburn accepted my Recommendation that Plaintiff's Sixth Claim for Relief against the United States be dismissed without prejudice for failure to exhaust administrative remedies [Docket No. 62].  Thus, Plaintiff has the five remaining claims for relief specified above against all Defendants in their official capacities, and against Defendant R. Wiley in his official and individual capacity.

## II.   Discussion

### A.   Legal Standards Applicable to Plaintiff's Claims

#### 1.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

When deciding a Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the Plaintiff. *Erickson v. Pardus*, _____ U.S. _____, 127 S. Ct. 2197 (2007). Courts should look to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). The complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed. *Lane v. Simon*, 495 F.3d 1182 (10th Cir. 2007). As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174 (10th Cir. 2007). Additionally, a court evaluating a complaint tested by a motion to dismiss may only consider the complaint and any documents attached to it as exhibits. *Hall*, 935 F.2d at 1112; *see also Erickson*, 127 S. Ct. at 2200 (evaluating sufficiency of complaint by reference only to the allegations of the complaint). Here, Defendants assert that Plaintiff

fails to state a claim for First, Fourth and Fifth Amendment relief.

Finally, because Plaintiff here is proceeding *pro se*, the Court construes his pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003). Even so, Plaintiff still retains "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This burden remains because a "*pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

### B.    Analysis

#### 1.    Claim One - Fifth Amendment Due Process Violations

Plaintiff argues that Defendants have imposed SAMs upon him without a hearing, in violation of his Fifth Amendment due process rights. *Complaint* [#3] at 12. Plaintiff contends that it is "routine and customary to provide an inmate with a hearing before taking away . . . rights and privileges enjoyed by other prisoners . . . ." *Id.* at 13. Defendants argue that Plaintiff's allegations do not demonstrate deprivations sufficient to rise to the level of a protected liberty interest, and even if they did, Plaintiff received all the process he was due. *Motion to Dismiss* [#55] at 4-5.

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Chambers v. Colo. Dept. of Corrections*, 205 F.3d 1237, 1242 (10th Cir. 2000) (quotations omitted). A plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Public Schs.*,

263 F.3d 1143, 1149 (10th Cir. 2001). First, he must show that he possesses a protected

liberty interest. *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184–85 (10th Cir. 2001).

Second, he must show that the procedures used in addressing his liberty interest were

inadequate under the circumstances. *See Bartell*, 263 F.3d at 1149. The Supreme Court

has held that, for prisoners, a liberty right exists only where an interference with that right

would impose an "atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). Finally, while it is

true that "the constitutional rights that prisoners possess are more limited in scope than the

constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223,

228 (2001), "[t]here is no iron curtain drawn between the Constitution and the prisons of

this country." *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974).

The Supreme Court, in *Wilkinson v. Austin*, 545 U.S. 209 (2005), examined the

process to be afforded inmates before and after their indefinite placement in an Ohio

maximum security prison ("OSP"). The OSP inmates were subject to extreme isolation,

were unable to converse with other inmates, had negligible human contact, and remained

in their cells for twenty-three hours per day. *Id.* at 214. The Supreme Court held that those

inmates had a protected liberty interest in avoiding assignment to the OSP due to its

particularly restrictive and severe conditions. *Id.* at 224. In reaching this conclusion, the

Court gave particular weight to two facts: (1) that the placement was for an indefinite

duration and reviewed only annually, and (2) that the placement disqualified an otherwise

eligible inmate from parole consideration. *Id.* According to the *Wilkinson* Court, "[w]hile

any of these considerations standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Id.* at 224.

In interpreting *Wilkinson*, the Tenth Circuit found that four non-dispositive factors should be considered in determining whether a particular plaintiff's incarceration in administrative segregation implicates a liberty interest. *Estate of DiMarco v. Wy. Dept. of Corr.*, 473 F.3d 1334,1342 (10th Cir. 2007). These factors are whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . . ; and (4) the placement is indeterminate . . . ." *Id.*

## i. Protected Liberty Interest

Using the guidelines set forth in *Wilkinson* and *DiMarco*, the Court must first consider whether Plaintiff possesses a constitutionally protected liberty interest. Applying the first *DiMarco* factor, the Court examines whether Plaintiff's "segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation . . . ." 473 F.3d at 1342. The Attorney General has found that, "[b]ased upon the information provided . . . of [Plaintiff's] proclivity for violence . . . there is substantial risk that his communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons." *Complaint* [#2], Ex. A, p. 1. Aside from conclusory allegations that he has a liberty interest, Plaintiff offers no evidence or argument to refute the Attorney General's finding. *Id.* at 7-14;

*Response* [#60] at 3-10.  Accordingly, I find that the conditions of Plaintiff's incarceration may relate to the legitimate penological interest of safety.

The Court must next consider whether the conditions of Plaintiff's incarceration are extreme.  *DiMarco*,  473 F.3d at 1342.  Defendants argue that "[t]he conditions imposed by the SAMs do not prevent plaintiff from having substantial, ongoing contact with his immediate family.  He may communicate in writing, by telephone, and in person with his immediate family. . . . [T]he monitoring requirements imposed on the plaintiff's contacts are not atypical in the prison environment and certainly do not impose a significant hardship." *Motion to Dismiss* [#55] at 4.  However, Plaintiff has alleged that he is held in solitary confinement, is not allowed to communicate with non-SAM inmates, is prohibited from reading any current newspapers or magazines, is prohibited from any contact with the news media, is prohibited from seeking legal assistance, has social visits and phone calls strictly restricted to immediate family members, is limited to one phone call per month, is banned from having physical contact with his family members, and cannot send more than one, three-page letter to an immediate family member per week.  *Complaint* [#2] at 7-8; *Response* [#60] at 5.

The Court is aware that in several unpublished opinions, the Tenth Circuit has found that the *general conditions* in administrative segregation at ADX are not extreme enough to implicate a liberty interest.  *See, e.g., Jordan v. Fed. Bureau of Prisons*, 191 Fed.Appx. 639, 651-52 (10th Cir. 2006) (unpublished decision) (finding that the conditions of administrative detention at ADX do not implicate a liberty interest); *Muhammad v. Finley*,

74 Fed.Appx. 847, 849 (10th Cir. 2003) (unpublished decision) (upholding dismissal of a claim that disciplinary segregation at ADX implicated a liberty interest).  Despite these holdings, I find that Plaintiff has alleged conditions which are far more extreme that those which have previously been considered by the Tenth Circuit.  For instance, in *Jordan*, a case where the plaintiff remained in administrative segregation for nearly five years pending a murder investigation, the plaintiff admitted that "he received many of the privileges afforded other inmates, and the only specific restrictions alleged involved his lack of access to a radio or television at different times and reduction of his exercise to two and one-half hours per week."  191 Fed. Appx. at 649.  The *Jordan* Court found that the conditions of the plaintiff's confinement were not onerous as he had frequent contact with the staff and his confinement was not indefinite, but was limited to the duration of a pending murder investigation.  *Id.* at 652.

Unlike *Jordan*, Plaintiff here alleges that the conditions of his confinement differ significantly from those of other prisoners at ADX, whether in the general population or in administrative segregation.  *Complaint* [#2] at 9-10.  For instance, Plaintiff alleges that he cannot send letters or have phone calls or social visits from anyone who is not an immediate family member, he cannot contact lawyers or news media, he is banned from having any current news and he cannot have contact visits with his family members.  *Id.* at 7.  Moreover, Plaintiff alleges that he is "banned from sending more than one letter per week to an immediate family member, this letter can have only a single recipient, and is restricted to only three double-sided pages."  *Id.* at 8.  Plaintiff argues that the conditions

of his confinement differ significantly from the majority of inmates at ADX, as the inmates who are not subjected to SAMs are allowed or even encouraged to have communications and visits from friends and family members, they can receive current news, they can make more than one personal phone call per month, and they can contact the media or seek legal assistance. *Response* [#60] at 4-5. Accepting Plaintiff's allegations as true, he has provided sufficient facts to support a finding that the conditions of his incarceration are extreme.

The third *DiMarco* factor, or whether the placement increases the duration of confinement, does not appear to be present in this case. 473 F.3d at 1342.

Finally, the Court examines whether the placement is indeterminate. *Id.* Plaintiff alleges that he has been under SAMs since 2003 and that they are reviewed only annually. There is no indication in the record to date that Plaintiff's incarceration while subject to SAMs is anything but indeterminate.

Based on my evaluation of the *DiMarco* factors, and at this stage of the case, it is conceivable that Plaintiff could prove facts showing that his incarceration while subject to SAMs is an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Accepting all of Plaintiff's allegations as true and construing them in the light most favorable to him, as required, it is conceivable that the conditions described by Plaintiff could result in the deprivation of a liberty interest. *See Wilkinson*, 545 U.S. at 224.

### ii.    Procedural Protections

Second, Plaintiff must show that the procedures utilized in imposing the SAMs were inadequate under the circumstances. *See Bartell*, 263 F.3d at 1149. The *Wilkinson* court addressed the issue of the process due to the OSP prisoners, applying the procedural due process framework set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).[2] In *Wilkinson*, the inmates were provided with both notice of the factual basis leading to consideration for OSP placement and a fair opportunity for rebuttal. 545 U.S. at 226. The *Wilkinson* court found that "[o]ur procedural due process cases have consistently observed that [notice and an opportunity to respond] are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations." *Id.* (citations omitted). The *Wilkinson* court also found it significant that the inmates were provided with periodic review upon their placement in OSP. *Id.* at 227. Finally, the *Wilkinson* court noted that "[w]here the inquiry draws more on the experience of prison administrators, and where the State's interest implicates the safety of other inmates and personnel, . . . informal, non adversary procedures" that allow notice and the opportunity to be heard sufficiently satisfy due process requirements. *Id.* at 228-29 (citing *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1 (1979); *Hewitt v. Helms*, 459 U.S. 460 (1983)).

Defendants argue that the "SAMs procedures here are substantively identical to the procedures upheld in *Wilkinson* . . . ." *Motion to Dismiss* [# 55] at 6. However, Plaintiff

---

[2]*Mathews* requires the consideration of three factors: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation and the value of additional safeguards; and (3) the Government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 335.

argues that Defendants' reliance on *Wilkinson* is misplaced. Plaintiff states that "[i]n Wilkinson, the inmates were given written notice of the proposed (not imposed) classification, were allowed to offer information and present objections, were allowed to attend the hearing, and were allowed to submit a written statement – all before the classification was imposed." *Response* [#60] at 6 (citing *Wilkinson*, 545 U.S. 209 at n. 2).

In addition to his allegation that he was not provided with the opportunity to object to the SAMs prior to their imposition, Plaintiff also argues that he has not been provided with a meaningful administrative review process. Specifically, Plaintiff points to a response he received during his use of the administrative remedy process, in which Harrell Watts, Administrator of National Inmate Appeals, stated, "[t]he Attorney General is empowered by Federal Regulation to impose SAMs. While the Bureau of Prisons (BOP) neither imposes nor rescinds SAMs, it implements the restrictions contained within and can and does accommodate specific requests relating to the restrictions." *Complaint* [#2] at Ex. D. Thus, Plaintiff argues that even if the BOP provided him a hearing after the imposition of SAMs, this hearing would be, in essence, meaningless as the BOP apparently lacks any real power or authority to rescind the restrictions imposed upon him.

Accepting all of Plaintiff's allegations as true, I find it conceivable that he could prove that he was not provided adequate due process prior to the implementation of the SAMs. Morever, unlike the procedures found to be constitutionally adequate in *Wilkinson*, the current regulations allowing for the implementation of SAMs do not appear to provide for "multiple levels of review for any decision . . . with power to overturn the recommendation

at each level." 545 U.S. at 227.  Accordingly, accepting all of Plaintiff's allegations as true and construing them in the light most favorable to him, as required, I find it conceivable that Plaintiff could prove that not only did he have a protected liberty interest in avoiding implementation of SAMs, he was not accorded all the process he was constitutionally due prior to the implementation of the SAMs.  As such, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss be **DENIED** insofar as it seeks dismissal of Claim One's Fifth Amendment due process allegations.

### 2.    Claim Two - Fifth Amendment Equal Protection Violations

Plaintiff argues that Defendants have violated his equal protection rights pursuant to the Fifth Amendment by imposing SAMs that deprive him of the privileges enjoyed by other inmates who are not subjected to SAMs.  *Complaint* [#2] at  15-21.

The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  The equal protection guarantee applies to the federal government through the Due Process Clause of the Fifth Amendment.  *Adarand Constructors, Inc. v. Slater*, 228 F.3d 1147, 1152 (10th Cir. 2000).  The Equal Protection Clause mandates that the government treat similarly situated people alike.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To assert a cognizable equal protection claim, Plaintiff must make the threshold showing that he is treated differently from other inmates who are similarly situated to him.  *Fogle v. Pierson*, 435 F.3d 1252, 1260-61 (10th Cir. 2006); *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) (citation omitted).  However, the

Complaint does not allege any facts that would invoke the equal protection clause. Instead, the Complaint affirmatively alleges that conditions are unequal between persons who are *not* similarly situated: the prisoners in the ADX general population and the prisoners in ADX under SAMs. Plaintiff is, by his own admission, *not* similarly situated to other inmates. His equal protection claim must therefore fail. *See, e.g., Fogle*, 435 F.3d at 1261 (finding that a prisoner in administrative segregation is not similarly situated to inmates in general population and cannot sustain a claim for equal protection); *Mitchell v. Wiley*, 2007 WL 2890095, *4 (D.Colo. Sept. 26, 2007) (unpublished decision) (finding that unequal conditions between ADX prisoners in general population and prisoners in other areas of ADX fail to state an equal protection violation); *Ajaj v. United States*, 2006 WL 3797871, *11 (D.Colo. Dec. 22, 2006) (unpublished decision) (finding that an inmate's failure to provide evidence that other inmates are similarly-situated precludes an equal protection claim). Accordingly, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss be **GRANTED** insofar as it seeks dismissal of Claim Two's equal protection allegations for failure to state a claim upon which relief can be granted.

### 3.    Claim Three - First Amendment Violations

Plaintiff argues that Defendants violated his freedom of speech rights pursuant to the First Amendment by imposing SAMs that deprive him of prompt access to un-censored publications of his choice, ban him from having phone calls and visits with his family, and ban him from correspondence with non-immediate family members, the news media, lawyers and legal aid groups and from communication with non-SAMs inmates. *Complaint*

[#2] at 22-23.

Pursuant to the First Amendment, a prison regulation or policy limiting speech must be upheld if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). In determining whether a restriction is "reasonably related to legitimate penological interests," the courts examine four factors: (1) whether the governmental objective is legitimate and neutral, and the policy is rationally related to that objective; (2) whether there are alternative means of exercising the asserted right; (3) the impact of accommodation of the right on guards and other inmates; and (4) whether there are alternatives to the policy that fully accommodate the prisoner's right at *de minimis* cost to valid penological interests. *See id.*; *Thornburgh v. Abbott*, 490 U.S. 401, 414-19 (1989).

In considering the *Turner* factors, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate relations between prisons and the outside world." *Thornburgh*, 490 U.S. at 408. Further, the burden is on the prisoner to show that the regulation is unreasonable. *See Covino v. Patrissi*, 967 F.2d 73, 79 (2nd Cir. 1992).

The first factor to be considered is whether the governmental objective is legitimate and neutral, and the policy is rationally related to that objective. *Thornburgh*, 490 U.S. at 414. Defendants argue that their objective is plainly legitimate and neutral, as based upon Plaintiff's "proclivity for violence . . . there is a substantial risk that his communications or contacts with persons could result in death or serious bodily injury to persons." *Motion to Dismiss* [#55] at 8. Maintenance of order and security in a prison has been found to be a

legitimate government purpose. *See, e.g., Rooks v. Zavares*, 2001 WL 34047959, *8 (D.Colo. Jan. 25, 2001) (unpublished decision). Even assuming the legitimacy of that governmental purpose, the Court must examine whether the SAMs imposed upon Plaintiff are rationally related to achievement of that objective. Plaintiff argues that while "the government has a legitimate interest in preventing violence . . . banning letters to anyone but immediate family bears no rational connection to that interest since it is the possibility of solicitation of violence in the letters that is the concern, not the letter itself, and the B.O.P. can simply read the letters and seize any that are objectionable in relation to its concern." *Response* [#60] at 13-14. Defendant does not directly address Plaintiff's argument, but the Court can conceive of reasons why prohibiting letters to anyone but family members could be rationally related to maintaining internal order and security. Aside from the practical difficulties and financial burden of monitoring unrestricted correspondence, the difficulty in determining whether the letters are coded, who the addressees are and whether they are likely to promote disorder and insecurity comes to mind. However, because of the lack of explanation in the record, it is not clear at this stage whether there is a rational relationship between the restrictions imposed on Plaintiff and the legitimate government interest of safety and security, and thus it cannot fairly be said that this factor weighs for or against Plaintiff.

The second *Turner* factor requires an examination of whether there are alternative means of exercising the asserted right. *See Thornburgh*, 490 U.S. at 414. Similar regulations in *Thornburgh* were held to permit an alternative means of exercising the

asserted right of receiving certain publications because "the regulations at issue permit[ted] a broad range of publications to be sent, received, and read . . . ." *Id.* at 418. However, the "alternatives need not be ideal [;] they need only be available." *Wardell v. Duncan*, 470 F.3d 954, 961 (10th Cir. 2006). Plaintiff has alleged that he is prevented from reading *any* contemporaneous newspapers and magazines and that the only newspaper he is allowed to receive is *USA Today*, and that after a thirty-day delay. *Complaint* [#2] at 7-8. Plaintiff further alleges that he is not allowed to communicate with any persons beside his designated "immediate" family members, and even that communication is extremely limited. Unlike the plaintiffs in *Thornburgh*, Plaintiff here is not allowed to receive a "broad range" of publications - he is allowed one publication. *Thornburgh*, 490 U.S. at 418. Moreover, his communications by mail appear to be extremely limited. Plaintiff does not appear to have "other avenues [that] remain available" for the exercise of his asserted First Amendment rights. *Turner*, 482 U.S. at 90. Accepting Plaintiff's allegations as true, this factor appears to weigh in favor of Plaintiff.

The third *Turner* factor requires consideration of the impact that accommodation of the right will have on guards and other inmates. *See Thornburgh*, 490 U.S. at 414. "Where . . . the right in question 'can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike,' the courts should defer to the 'informed discretion of corrections officials.'" *Id.* at 418 (citations omitted). Plaintiff alleges that BOP staff "already screen its inmates' correspondence . . . . [W]ere Plaintiff allowed to write non-immediate family members like he used to, the cost to the

government in relation to the cost it already spends reading many thousands of other inmates' correspondence would be absolutely minuscule." *Response* [#60] at 16-17. Accepting Plaintiff's allegations as true, this factor appears to weigh in favor of Plaintiff.

The fourth factor requires an examination of whether there are alternatives to the policy that fully accommodate the prisoner's right at *de minimis* cost to valid penological interests. *See Thornburgh*, 490 U.S. at 414. The Supreme Court has stated that "the absence of ready alternative is evidence of the reasonableness of a prison regulation," while "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Turner*, 482 U.S. at 90. Plaintiff has alleged that the correspondence of inmates not subject to SAMs is already screened by prison officials, and therefore also screening Plaintiff's correspondence would not create a large additional expense or burden. *Response* [#60] at 16-17. Accepting Plaintiff's allegations as true, this factor appears to weigh in favor of Plaintiff.

At this stage of the litigation, three of the four factors to be used in assessing the constitutionality of the SAMs in relation to Plaintiff's First Amendment rights support Plaintiff's claim. Interpreting the allegations of the Complaint liberally and assuming them to be true, as required, I find that it is conceivable that Plaintiff could prove facts entitling him to relief against Defendants on Claim Three. Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss be **DENIED** to the extent it seeks dismissal of Claim Three.

### 4. Claim Four - Fourth Amendment Violations

Plaintiff's Fourth Claim for Relief alleges that Defendants have violated his Fourth

Amendment right to be free from unreasonable searches by prohibiting him from having confidential correspondence with the courts and ordering that all of his meals be x-rayed prior to being provided to him. *Complaint* [#2] at 26-27. Plaintiff contends that this claim is supportable as "(1) exposure to x-rays is widely known and acknowledged to pose a cancer risk . . . and (2) because there is simply no legitimate nor rational justification to believe that Plaintiff would solicit the courts for violence." *Response* [#60] at 18.

### i. Exposure to X-rays

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. Relying on the Supreme Court's decision in *Hudson v. Palmer*, 468 U.S. 517, 524-25 (1984), Defendants argue that because inmates do not have a legitimate expectation of privacy in their prison cells, they can have no expectation of privacy in their food. *Motion to Dismiss* [#55] at 11-12. Defendants further argue that "there is no case law that establishes that x-raying personal effects is even a seizure that is protected by the Fourth Amendment." *Id.* at 12.

In *Dunn v. White*, 880 F.2d 1188, 1191 (10th Cir. 1989), the Tenth Circuit distinguished the *Hudson* rule from the holding in *Bell v. Wolfish*, 441 U.S. 520 (1979), finding that "[t]he prisoner's privacy interest in the integrity of his own person is still preserved under *Wolfish* . . . ." *Dunn*, 880 F.2d at 1191. Therefore, as District Judge Blackburn recognized in a previous decision involving this case, there is a "possibility that an inmate might be able to establish that contamination of his food violates his privacy

interest in bodily integrity in some circumstances." *Hale v. Ashcroft*, 2007 WL 2350150, *5 (D.Colo. 2007) (unpublished decision). However, to the extent that Plaintiff attempts to establish that his food is being contaminated, like District Judge Blackburn, I find that "it is not plausible to think that Plaintiff could establish that x-raying his meals contaminates his food or otherwise exposes him to any unreasonable health risk." *Id.* (citing to USDA Issues Final Rule on Meat and Poultry Irradiation, Food Safety and Inspection Service, United States Department of Agriculture (Dec. 1999) available at http://www.fsis.usda.gov/OA/background/irradfinal.htm (noting that exposure of meat and poultry to radiant energy, such as produced by x-rays, "does not increase human exposure to radiation since the energy used is not strong enough to cause food to become radioactive")). *See also* Food Irradiation, Division of Bacterial and Mycotic Diseases, Centers for Disease Control and Prevention (Oct. 2005) available at http://www.cdc.gov/ncidod/dbmd/diseaseinfo/foodirradiation.htm ("The safety of irradiated foods has been studied by feeding them to animals and to people . . . There is no evidence of adverse health effects in these well-controlled trials . . . The safety of irradiated foods has been endorsed by the World Health Organization (WHO), the Centers for Disease Control and Prevention (CDC) and by the Assistant Secretary of Health, as well as by the U.S. Department of Agriculture (USDA) and the Food and Drug Administration (FDA) "). Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED** insofar as it seeks dismissal of Plaintiff's Fourth Claim for Relief related to his allegations that his food is x-rayed prior to being provided to him.

### ii.    Confidential Correspondence with the Courts

Plaintiff alleges that the SAMs empower prison officials to open confidential legal mail that Plaintiff sends to the courts. *Complaint* [#2] at 25.   As such, Plaintiff alleges that the SAMs "strip [him] of confidential correspondence with the courts" in violation of his Fourth Amendment Right to be free from unreasonable searches. *Id.* Defendants argue that "because of the danger caused by plaintiff's communications with the outside world, the search is reasonable." *Motion to Dismiss* [#55] at 12.  The Supreme Court has treated interference with a prisoner's mail as implicating the First Amendment right to free speech. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 69 (1983); *Blount v. Rizzi*, 400 U.S. 410, 416 (1971); *Lamont v. Postmast General*, 381 U.S. 301, 307-08 (1965); *Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir. 2003).   Accordingly, the Court analyzes this claim under First Amendment standards.

A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment.  *Davis*, 320 F.3d at 351 (citations omitted).  Restrictions on prisoners' mail are justified only if they "further[] one of more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* (citing *Washington v. James*, 782 F.2d 1134, 1139 (2nd Cir. 1986)).  "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *See Thornburgh*, 490 U.S. at 413.

A prisoner has a right to be present when his legal mail is opened. *Wolf v. McDonnell*, 418 U.S. 539, 574-76 (1974); *Ramos v. Lamm*, 485 F.Supp. 122, 164 (D.Colo. 1979), *aff'd in part and set aside in part on other grounds by* 639 F.2d 559 (10th Cir. 1980); *Davis*, 320 F.2d at 351; *Bruscino v. Pugh*, 2006 WL 980580, *6 (D.Colo. Apr. 11, 2006) (unpublished decision). However, an "isolated incident of mail tampering is usually insufficient to establish a constitutional violation;" instead, the inmate must show a pattern or practice of opening an inmate's legal mail outside his presence. *Bruscino*, 2006 WL 980580 at *6 (citing *Davis*, 320 F.3d at 351; *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3rd Cir. 1995), *rev'd in part on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996)).

Plaintiff has alleged that prison officials open his outgoing legal mail, which is subject to greater constitutional protection because of the lesser security concerns present. *See Thornburgh*, 490 U.S. at 413. Plaintiff has further alleged more than an "isolated incident" of opening his legal mail, as he alleges that the SAMs create a pattern and practice of opening his properly marked legal mail outside of his presence. *Bruscino*, 2006 WL 980580 at *6. Therefore, interpreting the allegations of the Complaint liberally and assuming them to be true, as required, I find that it is conceivable that Plaintiff could prove facts entitling him to relief against Defendants on Claim Four. Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss be **DENIED** to the extent it seeks dismissal of Claim Four's allegations that prison officials open Plaintiff's constitutionally protected mail.

### 5.    Claim Five - Sec. 1985(3) Violations

Plaintiff's Fifth Claim for Relief alleges that Defendants engaged in a conspiracy to

violate his civil rights pursuant to 42 U.S.C. § 1985(3). *Complaint* [#2] at 29. Defendants argue that "[t]o state a claim under § 1985, plaintiff must allege facts that show: (1) a conspiracy motivated by racially discriminatory animus; (2) to deprive plaintiff of equal protection of the constitution or laws; and (3) an act in furtherance of the conspiracy; and (4) a deprivation of rights resulting therefrom." *Motion to Dismiss* [#55] at 13 (citing *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993)). Defendants also argue that Plaintiff's Complaint is devoid of any allegations of a conspiracy that was motivated by racially discriminatory animus, and thus fails to state a claim for relief pursuant to Sec. 1985(3). Plaintiff concedes in his Response that he fails to state a claim for Sec. 1985(3) relief. *Response* [#60] at 21. The Court has reviewed the Complaint and agrees that Plaintiff has failed to state a claim for Sec. 1985(3) relief. Accordingly, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss be **GRANTED** insofar as it seeks dismissal of Claim Five's Sec. 1985(3) allegations for failure to state a claim upon which relief can be granted.

III.    Conclusion

As set forth above, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss Official Capacity Claims [Docket No. 55; filed September 11, 2007] be **GRANTED IN PART AND DENIED IN PART**. Accordingly, I **RECOMMEND** the following:

(1) that the Motion to Dismiss be **DENIED** insofar as it seeks dismissal of Claim One's Fifth Amendment due process allegations;

(2) that the Motion to Dismiss be **GRANTED** insofar as it seeks dismissal of Claim Two's Fifth Amendment equal protection allegations for failure to state a claim upon which

relief can be granted;

(3) that the Motion to Dismiss be **DENIED** insofar as it seeks dismissal of Claim Three's First Amendment allegations;

(4) that the Motion to Dismiss be **GRANTED** insofar as it seeks dismissal of Claim Four's Fourth Amendment allegations based on Plaintiff's claims that his food is x-rayed prior to being provided to him;

(5) that the Motion to Dismiss be **DENIED** insofar as it seeks dismissal of Claim Four's Fourth Amendment allegations based on Plaintiff's claims that his legal mail is opened outside his presence;

(6) that the Motion to Dismiss be **GRANTED** insofar as it seeks dismissal of Claim Five's Sec. 1985(3) allegations for failure to state a claim upon which relief can be granted.

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:

__s/ Kristen L. Mix_____

United States Magistrate Judge

Dated:  July 29, 2008