IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-00541-PAB-KLM

MATTHEW F.  HALE,

        Plaintiff(s),

v.

JOHN ASHCROFT,
ALBERTO GONZALES,
HARRELL WATTS,
R.  WILEY,
MICHAEL NALLEY,
F. A.  BIERSCHBACH,
FEDERAL BUREAU OF INVESTIGATION,
HARLEY LAPPIN,
HARVEY CHURCH,
U.S. PENITENTIARY - MAX
FEDERAL BUREAU OF PRISONS,
KATHLEEN HAWK SAWYER,

        Defendant(s).
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

        This matter is before the Court on **Defendants' Motion to Dismiss Plaintiff's**

**Claims as Moot** [Docket No. 121; Filed March 23, 2009] ("Motion to Dismiss").  Plaintiff

filed a Response in opposition on April 10, 2009 [Docket No. 125], and Defendants filed a

Reply on April 24, 2009 [Docket No. 126].  The Motion to Dismiss requests dismissal of

Plaintiff's case because he is no longer subject to Special Administrative Measures

("SAMs") which allegedly impinge on Plaintiff's constitutional rights.

        The Motion to Dismiss has been fully briefed and is ripe for resolution.  Pursuant to

1

28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1(C)(3), the Motion has been referred to this Court for recommendation.  The Court has reviewed the parties' pleadings, the entire case file, and the applicable case law and is sufficiently advised in the premises.  For the reasons set forth below, the Court RECOMMENDS that the Motion be **GRANTED**.

## I.  Factual and Procedural Background

Plaintiff is a prisoner at the United States Penitentiary, ADMAX, in Florence, Colorado ("ADX").  On March 27, 2006, Plaintiff filed a *pro se* prisoner complaint pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) [Docket No. 2].  The Complaint alleges that, beginning in February 2003, the Attorney General found that Plaintiff constituted a national security risk and directed that he be placed under SAMs.  Plaintiff claims, in part, that the SAMs imposed upon him violate his First, Fourth, and Fifth Amendment rights.  *Complaint* [#2] at 11-28, 37.

SAMs are imposed pursuant to 28 C.F.R. § 501.3, which authorizes the United States Attorney General to direct the Director of the Bureau of Prisons ("BOP") to implement measures designed to prevent communications from being passed from a specific federal inmate to others.  SAMs are reserved for those prisoners  found to have a "proclivity for violence" or those found to create a "substantial risk [of] communications or contacts with persons [which] could result in death or serious bodily injury."  *Complaint* [#2] at 37.  Specifically, a SAMs designation necessarily means that the prisoner has "restrict[ed] access to mail, the media, the telephone, and visitors," including attorneys and family members, to a greater extent than nondesignee prisoners.  *Id.* at 7-9, 37-38.  In his

Complaint, Plaintiff seeks a declaratory judgment that SAMs are unconstitutional on their face and as applied to him, as well as the imposition of a permanent injunction.  *Id.* at 32-34.[1]

Plaintiff's classification as a SAMs inmate has been reviewed on a yearly basis.  *Id.* at 7.  On April 7, 2005, Plaintiff was found to have knowingly violated the SAMs by dictating a statement to his mother for publication to the news media.  *Id.* at 9.  As a result, he was subject to more-restrictive SAMs for one year, and thirteen (13) days of good time credit were disallowed.  *Id.* at Ex. H.  When Plaintiff's SAMs were next under review in March of 2006, they were expanded again to restrict Plaintiff's non-legal correspondence, to the effect that Plaintiff was not permitted to send more than one letter, consisting of three double-sided pieces of paper, per week to a single recipient, or correspond with family members outside of his immediate family.  *Id.* at 8.

Since the filing of Plaintiff's Complaint, preliminary dispositive motions have been adjudicated and Plaintiff's claims have been narrowed.  At present, three claims related to Plaintiff's SAMs designation remain:  Claim I, which asserts a Fifth Amendment due process claim; Claim III, which asserts a First Amendment right to free speech claim; and Claim IV, which asserts a Fourth Amendment unlawful search of mail claim.  These claims have also been limited to assert liability for the imposition of SAMs against Defendants in their official capacity only.

After adjudication of the preliminary dispositive motions, BOP officials conducted

---

[1] Plaintiff also sought a preliminary injunction and money damages.  Plaintiff's request for a preliminary injunction was denied [Docket No. 85], and Plaintiff's claims for monetary damages were dismissed [Docket Nos. 51 & 84].

their annual review of Plaintiff's SAMs designation.  On February 25, 2009, Plaintiff's SAMs restrictions were not renewed [Docket No. 121-2].  The next day, Plaintiff was removed from the restrictive-unit at ADX which houses SAMs inmates and incarcerated in the general population unit.  *Affidavit of Mark Collins* [#121-3] at 6.  While Plaintiff is no longer subject to SAMs, given his criminal history, including being convicted of soliciting the murder of a federal judge, Plaintiff was placed on "Restricted General Correspondence Status" and "Restricted Mail Status" pursuant to 28 C.F.R. §§ 540.15, .18.  *Id.* at 8-11. Plaintiff's new restrictions are not imposed pursuant to SAMs and are monitored only by the warden at ADX and the regional counsel assigned to that facility.  The restrictions are reviewed on a bi-annual basis and subject to challenge through the facility's administrative review process.  *Id.* at 11; 28 C.F.R. §§ 540.15(c)(2)(iii), .18(c)(2)(v).

Given the termination of Plaintiff's SAMs designation and the removal of all conditions imposed on Plaintiff by virtue of that designation, Defendants have filed a Motion to Dismiss Plaintiff's remaining claims as moot.  Specifically, Defendants argue that because Plaintiff's SAMs designation has been lifted, the injunctive relief that he seeks is no longer available and his standing to challenged the constitutionality of the SAMs regulation as applied and on its face has been eliminated.  *Motion to Dismiss* [#121] at 7-9. Further, Defendants argue that to the extent that Plaintiff remains unhappy with his current conditions imposed by virtue of his restricted mail status, such alleged injury requires exhaustion of Plaintiff's administrative remedies regarding those conditions prior to commencement of any litigation.  *Id.* at 9-10.

In Plaintiff's opposition to the Motion to Dismiss, Plaintiff argues that his case is not moot because his current conditions are similar to those imposed pursuant to SAMs.

*Response* [#125] at 2-3.  Further, he argues that because SAMs could be imposed upon him at any time, he continues to need declaratory and injunctive relief, i.e., the constitutional invalidation of the SAMs regulation and an injunction preventing any future imposition of SAMs.  *Id.* at 3-4.

In their Reply, Defendants succinctly summarize Plaintiff's opposition.   First, according to Plaintiff, the case is not moot because he "might be subject to SAMs at some indeterminate point in the future."  *Reply* [#126] at 1 (citing *Response* [#125] at 6).  Second, Plaintiff argues that "Defendants' decision to remove the SAMs at the time of the February 2009 annual review was merely a tactic to put an end to Plaintiff's lawsuit."  *Id.* at 2 (citing *Response* [#125] at 3, 5).   Third, because "[s]ome non-SAMs restrictions on Plaintiff's communications remain . . ., according to Plaintiff, this Court should decline to dismiss his lawsuit challenging the more exhaustive (but recently lifted) SAMs restrictions."  *Id.* at 2. Defendants also address each of Plaintiff's points and argue that the possibility of future imposition of SAMs does not preserve his case as there is no ongoing injury in relation to SAMs that can be remedied.  *Id.* at 2-4.  Defendants contend that the decision to remove the SAMs designation was not tied to the lawsuit, but was made independently during Plaintiff's annual review.  *Id.* at 5.   Finally, Defendants argue that the "fact that BOP inmates face a variety of BOP-implemented restrictions – including limitations on their outgoing communications – does not mean that Plaintiff's challenge to the SAMs remains a live controversy."  *Id.* at 6.

## II.  Standard of Review

Because federal courts are courts of limited jurisdiction, the Court must have a basis for exercising jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  Fed. R.

Civ. P. 12(b)(1) permits the Court to test whether I have jurisdiction to properly hear the case before me.  Dismissal of a federal claim for lack of jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms:  a facial attack or a factual attack.  Here, Defendants assert a factual attack on the basis of mootness and standing.  *Motion* [#127] at 4-5.  When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), the Court is free to consider facts and information outside the complaint to resolve any jurisdictional disputes.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th 1995).  Further, Plaintiff, rather than the movant, bears "the burden to prove that the court has jurisdiction over the subject matter."  *Stuarte v. Colo. Interstate Gas Co.*, 130 F. Supp. 2d 1263, 1265 (D. Wyo. 2000).

Finally, the Court must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  For example, the Court may treat a *pro se* litigant's complaint as an affidavit if it alleges facts based on personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) (citation omitted)).  However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf."  *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In

addition, *pro se* litigants must follow the same procedural rules that govern other litigants.

*See Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.  Analysis

A summary of Defendants' position relevant to the Court's jurisdiction is reproduced

below:

> Non-SAMs ADX inmates are subject to myriad restrictions, some of which bear some resemblance to the restrictions set forth in SAMs. But, the SAMs "package" that applies to only 42 inmates in the BOP system differs markedly in purpose and scope from any individual restriction that the BOP imposes without input from the Attorney General or the FBI.  Plaintiff now attempts to transform the nature of the pending lawsuit to challenge far more generic restrictions, which do not involve the same governing authorities or even the same defendants.  This Court should preserve the distinction between the SAMs and the BOP-implemented mail restrictions designed for non-SAMs inmates by finding that Plaintiff's challenge to the SAMs – the reason he brought this lawsuit – is moot.

*Reply* [#126] 6-7.  For the following reasons, I agree.

### A.    Mootness

This Court has no jurisdiction to consider moot cases, which are described as cases

in which "the issues presented are no longer 'live' or the parties lack a legally cognizable

interest in the outcome."  *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396

(1980) (citation omitted).  A claim may become moot at any point in the controversy and

deprive the Court of authority to decide questions which had previously been at issue.

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990).  In this way, "a case may be

rendered moot (and, therefore, subject to dismissal) if changed circumstances eliminate

any possibility of effectual relief."  *Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.*, 321 F.3d

9, 17 (1st Cir. 2003).

In the present case, Plaintiff seeks injunctive relief, i.e., to "permanently enjoin

defendants from imposing – pursuant to 28 C.F.R. sec. 501.3 – SAM[s] upon any inmate in the Federal Bureau of Prisons, and, specifically, prohibit the defendants permanently from imposing any of the 'measures' in the SAM[s] upon me."  *Complaint* [#2] at 34.  As is apparent from the face of Plaintiff's Complaint, his proposed injunctive relief is tied exclusively to the imposition of SAMs and the conditions imposed thereby.  However, injunctive relief can only be obtained for current or prospective injury and cannot be conditioned on a past injury that has already been remedied.  *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 n.6 (10th Cir. 2005) (quoting *San Diego County Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("Because plaintiffs seek declaratory and injunctive relief only . . . it is insufficient for them to demonstrate only a past injury")).  Further, to the extent that Plaintiff suggests that nothing would prevent Defendants from imposing SAMs in the future, generally, an injunction is only appropriate "to prevent existing or presently threatened injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future."  *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931); *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) ("The purpose of [injunctive relief] is not to remedy past harm but to protect plaintiff[] from irreparable injury that will surely result . . . .").

Although not stated in so many words, given Plaintiff's *pro se* status, I liberally interpret Plaintiff's argument to be that the doctrine of voluntary cessation applies.  Plaintiff contends that because Defendants' policies and procedures would allow them to impose SAMs upon him in the future, the Court cannot be assured that the alleged injury is unlikely to reoccur.  *See Response* [#125] at 4.  Accordingly, Plaintiff essentially argues that Defendants' voluntary cessation of his SAMs classification does not serve to moot his

claims.  *See Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004).  However, Defendants persuasively counter that because any new classification of Plaintiff as a SAMs inmate would be highly fact specific, the voluntary cessation doctrine is inapplicable.  *Reply* [#126] at 2-3.  This is true because "review of future instances of wrongful behavior may be quite different [from] the complained-of example that already has ceased."  *Unified Sch. Dist. No. 259, Sedgwick County, Kan. v. Disability Rights Ctr.*, 491 F.3d 1143, 1150 (10th Cir. 2007).  As an example, if Plaintiff were to commit new disciplinary infractions, apart from the conduct which led to his conviction or previous extensions of his SAMs, such conduct might justify any future decision to impose new SAMs restrictions on Plaintiff, which would have nothing to do with the present lawsuit.  Moreover, given that Defendants have apparently determined that Plaintiff sufficiently mitigated the reasons for his SAMs [Docket No. 121-2], it seems clear that Defendants could not reverse that determination at a later date based on past conduct and use it as an excuse to reimpose the prior SAMs designation.  While they could impose a new SAMs designation for other legitimate reasons, e.g., new threats through the mail, such a determination would be unrelated to the original imposition of his SAMs and the annual reviews thereafter.  *See Tandy*, 380 F.3d at 1291 (recognizing mootness if "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." (citation omitted)).[2]

---

[2] The Court is not persuaded by Plaintiff's argument that Defendants terminated his SAMs to avoid litigating this lawsuit.  *See Response* [#125] at 3.  Assuming Defendants' motives are somehow relevant, they would have the same incentive to terminate restrictions on every inmate who is litigating his SAMs.  I take judicial notice of another case pending in this District, *Hafed v. Fed'l BOP*, 07-cv-01499-ZLW-KMT, where the inmate's SAMs appear to remain pending. The fact that other ADX inmates maintain SAMs, despite their ongoing litigation, undercuts the assertion that Defendants had an improper motive here.

Further, I find that Plaintiff's case does not fall within the "capable of repetition, yet evading review" exception to the mootness doctrine. *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).  This exception only applies where two narrow conditions are present: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again."  *Spencer Kemna*, 523 U.S. 1, 17 (1998) (citations omitted).  Both conditions must be satisfied to apply the exception.  *Id.*  Putting aside whether the yearly review of SAMs is too short in duration to adjudicate their constitutionality, as noted above, I find that there is no reasonable expectation that this Plaintiff will be subject to the same SAMs in the future.  While Plaintiff's own future conduct may dictate the imposition of new SAMs, this event is entirely within his control and too speculative to raise a reasonable concern.

Although Plaintiff disagrees, the present case is analogous to *United States v. Reid*, 369 F.3d 619, 625 (1st Cir. 2004).  There, the First Circuit found that the litigant could not challenge the constitutionality of SAMs because he was no longer subject to the SAMs at issue in his complaint.  Specifically, because the SAMs previously imposed "no longer determine [the litigant's] conditions of confinement," "[n]o interest of [the litigant's] would be served by invalidating them now."  *Id.* at 625.  The court also recognized that even though the expiration of SAMs did not provide the litigant with the full relief he was asking for such that a continuing dispute remained, "because the factual and legal circumstances surrounding [the litigant's case] have changed so dramatically . . . [he] no longer asserts an injury that is 'likely to be redressed by a favorable judicial decision' in this proceeding."  *Id.* at 624-25 (citation omitted).  The same is true here.  For example, if the Court were to

10

enjoin Defendants from imposing SAMs, because Plaintiff is no longer subject to SAMs, any opinion reached or injunction ordered would be merely advisory and would not provide Plaintiff with any relief from his current conditions which are not related to SAMs.  *See id.* at 624-25; *see also Teague v. Hood*, No. 06-cv-01800-LTB-CBS, 2008 WL 2228905, at *16 (D. Colo. May 27, 2008) (unpublished decision) (noting that injunctive relief should not lie to address conduct that occurred after complaint was filed).

### B.  Standing

A party must maintain standing for the duration of the case at issue.  *Qwest Communs. Int'l, Inc. v. FCC*, 240 F.3d 886, 891 (10th Cir. 2001) ("Standing must exist throughout the litigation."); 35A C.J.S. *Federal Procedure* § 59 (2008) ("If the plaintiff loses standing at any time during the pendency of the proceedings in the federal district court or in the appellate courts, the matter becomes moot, and the court loses jurisdiction.").  The elements of standing are the existence of a particularized injury that is fairly traceable to Defendants and capable of being redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In the present case, Plaintiff also seeks declaratory relief in the form of invalidation of 28 C.F.R. § 501.3 "because it allows for and provides for the deprivation of numerous liberties without a prior hearing" in alleged violation of the First, Fourth and Fifth Amendments.  *Complaint* [#2] at 32.  Here, there is no dispute that as of February 2009, Plaintiff's SAMs have been removed, and the restrictions imposed thereby have been eliminated [Docket No. 121-2].  As such, there is no remaining concrete or imminent injury regarding this Plaintiff that can be redressed by a favorable decision resulting from the constitutional invalidation of SAMs.  As was also the case in *Reid*, because Plaintiff's

11

remaining claims would only entitle him to declaratory and injunctive relief, as opposed to monetary damages, he lacks standing to litigate the constitutionality of the SAMs regulation on its face or as applied. *See Reid*, 369 F.3d at 625.

While the Court gives credence to Plaintiff's contention that he is still subject to conditions which he finds to be at odds with his constitutional rights, those conditions, no matter how similar, are simply not before the Court on his present Complaint. In any event, the Court notes that Defendants exhaustively detail how much less invasive Plaintiff's new conditions are in comparison to his prior SAMs. *See Motion* [#121] at 4-5. Moreover, as Defendants argue, any new conditions about which Plaintiff currently complains were imposed pursuant to different regulatory authority by different individuals. Presumably, the authority, procedures and considerations utilized to impose the new conditions differ significantly from those utilized to impose SAMs and would greatly impact the Court's analysis of whether those conditions have been imposed and carried out within the constitutional directives of the First, Fourth and Fifth Amendments. Accordingly, as noted by the *Reid* Court, the "factual and legal boundaries of the parties' dispute have changed so . . . that any decision [providing the litigant with the relief at issue in the complaint] would be essentially irrelevant." *Reid*, 369 F.3d at 627. When such is the case, the party lacks "a particularized, concrete stake that would be affected by [the Court's] judgment." *Lewis*, 494 U.S. at 479.

Finally, to the extent that Plaintiff "wishes to challenge the government's continued [alleged deprivations], he may do so by whatever procedures are available to him . . ., including any required administrative review [pursuant to] 42 U.S.C. § 1997e(a)." *Reid*, 369 F.3d at 627. To hold otherwise would essentially circumvent the threshold requirement of

exhaustion imposed by the Prison Litigation Reform Act ("PLRA") prior to litigating any claim involving Plaintiff's current conditions of confinement and the procedures used to implement them.  *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (noting that the purpose of the PLRA is to provide the facility with a chance to resolve the alleged injury prior to Court involvement); *Jernigan v. Stuchell*, 304 F.3d 1030, 1033 (10th Cir. 2002) (noting that if the Court were to consider claims which the facility was not first allowed to address, the PLRA's purpose and mandatory nature would be "trivialized").

## IV.  Conclusion

As set forth above, the Court **RECOMMENDS** that Defendants' Motion to Dismiss [#121] be **GRANTED**, and that Plaintiff's case be **dismissed** pursuant to Fed. R. Civ. P. 12(b)(1).

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  June 29, 2009

BY THE COURT:

 s/ Kristen L. Mix
United States Magistrate Judge
Kristen L. Mix